UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
FREDDY COLON-RODRIGUEZ,

                Petitioner,                :      **REPORT &**

                                      :      **RECOMMENDATION**

            -against-              :  **07 Civ. 8126(GBD)(MHD)**

                                        :

NEW YORK CITY DEPARTMENT OF CORRECTION,

NEW YORK CITY BOARD OF CORRECTION, and  :

THE CITY OF NEW YORK,

                Defendants.        :          3/27/09
----------------------------------------x

TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:


    Pro se plaintiff Freddy Colon-Rodriguez, formerly an inmate in
the New York City correctional system, filed a complaint in this
court on September 17, 2007, asserting a claim under 42 U.S.C. §
1983 against the New York City Department of Correction ("DOC"),
the New York City Board of Correction ("BOC"), and the City of New
York to the effect that defendants had failed to protect him from
a physical assault by another inmate. Plaintiff seeks five million
dollars ($5,000,000) in damages for injuries he sustained from the
alleged attack.


    Defendants  moved  on  November  21,  2007  to  dismiss  the

complaint, pursuant to Fed. R. Civ. Pro. 12(b)(6). In support of that motion defendants argued that plaintiff failed to state a Monell claim against the City and that he had improperly named DOC and BOC as defendants, as they are not suable entities. They also argued that if the complaint were read to assert any state-law claims, those claims would have to be dismissed for failure to file a notice of claim under N.Y. General Municipal Law § 50-e.

Plaintiff did not explicitly respond to the motion. Instead, on December 1, 2007, he filed with the Clerk of the Court what is denominated as an "Amended Verified Complaint", although we note that this was done without leave of the court. The caption of that complaint reflects that plaintiff was still suing the three originally named institutional defendants, and indeed in the body of the complaint he identified them as the defendants he intended to name. (Am. Compl. ¶ 3).

Because of plaintiff's pro se status, we deemed this document to be a response to the motion to dismiss and asked defendants to address the question of whether the proposed amended complaint cured the defects of the original complaint targeted by the pending motion. (See Order dated Jan. 25, 2008). Defendants supplemented their original motion on February 6, 2008 by letter brief that

2

still argued for dismissal on the same grounds. This filing provoked a response from plaintiff and another reply from defendants. Finally, some months later, in deference to the fact that the proposed amended pleading mentioned an identified New York City corrections officer as having been responsible for ignoring warnings that the inmate who allegedly assaulted plaintiff was dangerous, we directed that plaintiff explain why he had not named this individual as a defendant in the original complaint. Plaintiff responded with an explanation that effectively completed the briefing on defendants' motion.

For the reasons that follow, we recommend that defendants' motion be granted in part and denied in part.

ANALYSIS

A. Rule 12(b)(6) Criteria

We start by noting the standards that the movant must meet in order to obtain dismissal for failure to state a claim. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other

3

grounds, Davis v. Scherer, 468 U.S. 183 (1984); accord, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1964-65 (2007); Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007).

In assessing such a motion, the court must assume the truth of the well-pled factual allegations of the complaint and must draw all reasonable inferences against the movant. See, e.g., Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996). Moreover, when the complaint has been authored, as here, by an untutored pro se plaintiff, the court is to interpet the pleading with particularly heightened solicitude, reading the complaint "to raise the strongest arguments it suggests." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007); see, e.g., Hughes v. Rowe, 449 U.S. 5, 9-10 (1980) (per curiam); Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). In this regard, the court may treat the pro se plaintiff's response to the dismissal motion as a de facto amendment to, or clarification of, his complaint. See, e.g., Hernandez v. Goord, 312 F. Supp.2d 537, 542-43 (S.D.N.Y. 2004) (citing, inter alia, Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)); accord, Warren v. District of Columbia, 353 F.3d 36, 37-38 (D.C. Cir. 2004) (citing Anyanwutaku v. Moore, 151 F.3d 1053, 1058 (D.C. Cir. 1998)).

4

Unlike the traditional test on a Rule 12(b)(6) motion, which requires that the complaint not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Still, 101 F.3d at 891 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)), under Twombly a purported claim will not survive unless it is apparent from the face of the complaint that the claim is at least "plausible." Twombly, 550 U.S. at 559, 127 S. Ct. at 1967; see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), cert. granted, 128 S.Ct. 2931 (2008). Twombly does not impose "a universal standard of heightened fact pleading, but . . . instead requir[es] a flexible 'plausibility standard', which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal, 490 F.3d at 157-58 (emphasis in original). In short, the pleading must "raise a right to relief above the speculative level." ATSI Commc'ns, Inc. v. Shaar Fund Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555. 127 S. Ct. at 1964).[1]

In addressing a Rule 12(b)(6) motion, the court may not

---

[1] The Second Circuit has not yet addressed the impact of Twombly on the assessment of pleadings by pro se litigants. We assume, however, that the plausibility test is applicable, but that the court's interpretation of what is said in the pleading must still accord with the flexible standard previously recognized when confronting a pro se pleading.

consider evidence proffered by any party. Rather, it is limited to reviewing the four corners of the complaint, any documents attached to that pleading or incorporated in it by reference, any documents that are "integral" to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice. See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 2509 (2007); ATSI Commc'ns, 493 F.3d at 98; Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999).

B.    Assessment of Defendants' Motion

For simplicity, we assume at this stage that the operative pleading is the proposed amended complaint, which reiterates plaintiff's original claim, while providing somewhat greater detail about the factual basis for the claim. As noted, plaintiff names as defendants only the City, the Department of Correction and the Board of Correction.

He alleges that on September 10, 2004 he was assigned to a dormitory in the Anna M. Kross Center at Rikers Island, and that another inmate, named Thompson, was housed in the same unit. (Am. Compl. ¶ 11). According to plaintiff, he believes that Thompson

6

suffered from some form of mental illness that manifested itself in "serious disruptive behavior." (Id. ¶ 13). He further alleges that "on several occasions" after September 10, 2004 he advised a Corrections Officer Walker that "he feared for his life/health and safety due to serious conflicts problems [sic.] demonstrated by inmate 'Thompson'" and that he "requested that one of them be transferred as soon as possible." (Id. ¶ 12). According to plaintiff, he and another inmate reiterated this concern to Officer Walker on September 19, 2004, informing Walker "of inmate[] Thompson's serious disruptive behavior, indicating that he appear[s] to have some mental health issues." (Id. ¶ 13).

Plaintiff reports that on the very next day Thompson struck him from behind, leaving him unconscious on the floor of the dormitory dayroom. (Id. ¶ 14). He goes on to allege in some detail that this attack left him with long-term injuries, including a brain hemorrhage, seizures, a dropped foot and assorted other apparently permanent maladies for which he has needed extended treatment. (Id. ¶¶ 15-22).

As for the responsibility for this attack, plaintiff alleges that it "was the direct result of the defendants' failure and refusal to furnish a reasonably safe environment for plaintiff

7

while he was incarcerated at Rikers Island . . . in that plaintiff's attacker is believed to have had a history of mental impairment and/or mental/emotional problems which rendered him a danger to plaintiff in particular and to the general population with whom he was . . . permitted to associate on a continuing basis." (Id. ¶ 23). He goes on to allege several possible bases for municipal liability, asserting that "defendants knew about the wrong but did not try to stop or fix it, failed to oversee the one(s) who caused the wrong, such as hiring unqualified people or [not] adequately train[ing] them; [and] created a policy or custom that allowed the wrong to occur." (Id. ¶ 26).

As noted, defendants argue that the entirety of the complaint is subject to dismissal because two of the defendants are not suable entities and plaintiff fails to plead a basis for a claim of liability against the City. We address these two issues separately, and then consider defendants' argument about state-law claims.

## 1.   DOC and BOC are not Suable Entities Under the New York City Charter

Fed. R. Civ. P. 17(b) provides that the capacity of a government agency to sue or be sued is determined by state law. Defendants cite Chapter 16, § 396 of the Charter of the City of New York as evidencing the fact that City agencies cannot be sued. This

8

language, however, merely provides that "[a]ll actions for the recovery of penalties ... shall be brought in the name of the City of New York and not in that of any agency." This wording speaks only to the capacity of agencies to initiate a lawsuit, not their status as suable defendants. Nonetheless, since municipal agencies lack independent legal status and have only the authority conferred by legislation or regulation, see, e.g., Am. Tel. & Tel. Co. v. New York Dep't of Human Resources, 736 F. Supp. 496, 498 (S.D.N.Y. 1990); Yonkers Comm'n on Human Rights v. Yonkers, 654 F. Supp. 544, 551 (S.D.N.Y. 1987), the courts have consistently held that New York City agencies are not suable entities. See, e.g., Echevarria v. Dep't of Corr. Servs., 48 F. Supp.2d 388, 391 (S.D.N.Y. 1999); Adams v. Galetta, 966 F. Supp. 210, 212 (S.D.N.Y. 1997); Am. Tel. & Tel. Co., 736 F. Supp. at 498, Wilson v. City of New York, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992).

Since we are aware of no legislation or regulation that subjects the DOC or BOC or other municipal agencies to suit, we concur with this line of authority insofar as it holds that City agencies are not suable entities. We therefore conclude that the defendants' motion, to the extent that it seeks dismissal of the DOC and BOC from the case, should be granted.

2.    The Claim Against New York City

We are left to determine whether plaintiff's complaint states a claim against the City of New York, as the one remaining defendant, for the harm caused to plaintiff as the result of the attack by his fellow inmate. We conclude that it does.

Plaintiff seeks to impose liability on the City for the actions or inactions of its agents -- in this case the staff of the Rikers Island facility, including Officer Walker -- in allowing a mentally disturbed and dangerous inmate to mingle with other prisoners despite repeated warnings of aggressive behavior. Municipal liability under section 1983 may be imposed only if the City is shown to bear responsibility for the alleged violation of the plaintiff's constitutional rights. To establish municipal liability, the plaintiff must demonstrate that his constitutional rights have been infringed by a municipal agent acting under color of state law and that his injury was caused by a "municipal 'policy' or 'custom'". Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997) (quoting, inter alia, Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978)). The Supreme Court has further held that, in appropriate circumstances, a municipal failure to provide adequate training or supervision of

10

its agents may constitute such a policy or custom and thereby trigger liability under section 1983. See, e.g., id. at 407-08 (describing City of Canton v. Harris, 489 U.S. 378, 387-91 (1989)). Accord, e.g., Sorlucco v. New York City Police Dep't, 971 F.2d 864, 873 (2d Cir. 1992).[2]

In seeking dismissal, defendants mildly question the adequacy of plaintiff's pleading insofar as he asserts that he was denied a safe prison environment by virtue of the failure to protect him from the aggressive actions of another inmate. Plaintiff's allegations are adequate to fulfill the pleading requirements in

---

[2] As a matter of proof, a plaintiff seeking to establish liability on such a basis must demonstrate a pattern of conduct on the part of the municipal decision-makers that is tantamount to deliberate indifference to the significant prospect that the manner in which city agents are trained or supervised will lead to the violation of citizens' rights. See, e.g., Brown, 520 U.S. at 407-08; Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998). When asserting that the municipality failed to adequately train or supervise its agents, the plaintiff must show that an agent violated a "clearly established federal right" of the plaintiff, and must further demonstrate:

> (1) that "a policymaker [of the municipality] knows 'to a moral certainty' that [its] employees will confront a given situation"; (2) that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights."

Young, 160 F.3d at 904 (quoting Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)).

11

this respect, since it is well settled that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotations omitted). The test of a failure-to-protect claim is whether defendants acted with deliberate indifference. E.g., id. at 833-34; Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996). For pleading purposes, that requirement may be satisfied by an allegation that the prison staffer had "knowledge that an inmate face[d] a substantial risk of serious harm and he disregard[ed] that risk by failing to take reasonable measures to abate the harm." Id. at 620. See Farmer, 511 U.S. at 842. Plaintiff's account of repeated warnings to the correction officer about the assailant prior to the incident, as well as his assertion that the inmate was in fact acting in a disruptive manner, satisfy this requirement. See, e.g., Ayers v. Coughlin, 780 F.2d 205, 209-10 (2d Cir. 1985) (summary judgment inappropriate based on evidence of warning to prison guard of danger of attack); Colman v. Vasquez, 142 F. Supp.2d 226, 237 (D. Conn. 2001); compare, e.g., Patrick v. Amicucci, 2007 WL 840124, at *3-5 (S.D.N.Y. Mar. 19, 2007) (granting defendants summary judgment since plaintiff did not warn defendants of danger posed by fellow inmate).

The principal focus of defendants' argument is on the asserted inadequacy of the complaint to plead a basis for holding the City

12

responsible for such a constitutional violation. We disagree.

The starting point for judging the adequacy of the complaint on this score is Fed. R. Civ. P. 8(a)(2), which "requires that a complaint include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002). This requirement of "a short and plain statement" does not involve detailing "the facts upon which [the plaintiff] bases his claim." Leatherman, 507 U.S. at 168 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). As the Supreme Court made plain in Leatherman, when a plaintiff seeks to plead municipal liability under a Monell theory, he may simply identify the basic link of the constitutional tort to municipal responsibility -- in that case based on the allegation that the defendant municipality failed "to adequately train the police officers involved." Id. at 164 (citing Canton, 489 U.S. 378 (1989)).[3]

---

[3] As described by the Fifth Circuit in affirming the dismissal of Monell claims in Leatherman, the complaint

alleged generally that the municipalities failed to formulate and implement an adequate policy to train [their] officers on the proper manner to execute search warrants and respond when confronted by family dogs. The allegations were of the 'boilerplate' variety, alleging no underlying facts other than the events described above [the invasion of plaintiffs' homes] to

13

In this case plaintiff alleges, in spare terms, that the City is responsible for his injuries because it "knew about the wrong" -- a vague reference that we liberally interpret as alleging knowledge that the presence in the prison population of a dangerous inmate made the prison facility an unsafe place -- and that the City not only "did not try to stop or fix it", but "failed to oversee the one[s] who caused the wrong" -- a reference, we believe, to a failure to correct problems in management of the facility -- and contributed to the incident by "hiring unqualified people or [not] adequately training them . . . ." Plaintiff also asserts that the City "created a policy or custom that allowed a wrong to occur." (Am. Compl. ¶ 26).

This pro se set of allegations invokes several grounds for potential municipal liability, and given both the limited requirement of Rule 8(a)(2) and the liberality with which we must read the pleading, these allegations pass pleading muster. See, e.g., Rheingold v. Harrison Town Police Dep't, 568 F. Supp.2d 384, 394 (S.D.N.Y. 2008) (noting inter alia that Leatherman effectively overruled Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993)

---

support the assertions that the municipalities had adopted policies, customs, and practices condoning the conduct of the officers involved.

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 954 F.2d 1054, 1056 (5th Cir. 1992).

14

(requiring specific factual allegations to support <u>Monell</u> claim));
<u>Dzwonczyk v. Syracuse City Police Dep't</u>, 2008 WL 5459147, at *15
(N.D.N.Y. Dec. 22, 2008); <u>Hall v. Marshall</u>, 479 F. Supp.2d 304, 316
(E.D.N.Y. 2007); <u>Cooper v. MTA</u>, 2006 WL 1975936, at *3 (S.D.N.Y.
July 14, 2006); <u>Nesbitt v. Cty. of Nassau</u>, 2006 WL 3511377, at *3-4
(E.D.N.Y. Dec. 6, 2006). <u>See also Saenz v. Lucas</u>, 2008 WL 2735867,
at *5 (S.D.N.Y. July 9, 2008). Indeed, the pleadings ultimately
vindicated in <u>Leatherman</u> said no more than that the defendant
municipality had failed adequately to train the police involved in
the incident -- in effect what plaintiff is alleging here. <u>See</u>
<u>Leatherman</u>, 954 F.2d at 1056.[4]

In resisting this conclusion, defendants offer an analysis
grounded in cases that assess the adequacy of evidence to support
a <u>Monell</u> claim, whether in the context of a summary-judgment motion
or at trial. (<u>See</u> Defs.' Mem. of Law 5-6). Indeed, defendants never
address <u>Leatherman</u> or its progeny, or the requirements of Rule

_____

[4] An argument might be made that the holding of the Supreme
Court in <u>Leatherman</u> was limited to rejecting a "heightened"
standard of pleading invoked by the Fifth Circuit. This does not
help defendants since the heightened standard rejected by the
Court amounted to a requirement that the plaintiff plead more
than the bare-bones allegations of a failure-to-train claim. In
the wake of the Supreme Court's decision in <u>Leatherman</u>, the case
proceeded through summary judgment, presumably based on the
pleadings upheld by the Supreme Court. <u>See Leatherman v. Tarrant</u>
<u>County Narcotics Intelligence & Coordination Unit</u>, 993 F.2d 1177
(5th Cir. 1993) (per curiam) (remanding to district court) and 28
F.3d 1388 (5th Cir. 1994) (affirming summary judgment).

8(a)(2) as they apply to a claim of municipal liability.

The only explicit references by defendants to a pleading requirement are found in their assertion that under Twombly the complaint lacks plausibility and their citation to the Second Circuit's decision in Dwares, from which they quote only a statement that "a single incident alleged in a complaint . . . generally will not suffice to raise an inference of the existence of a custom or policy." (Defs.' Mem. of Law 5; Feb. 6, 2008 letter to the Court from Ass't Corp. Counsel Anna Nguyen 2). We first address the Dwares citation.

Dwares cannot support defendants' argument for several reasons. First, as numerous courts (including the Second Circuit) have noted, insofar as Dwares appears to require the pleading of specific facts linking a constitutional tort to the municipality, it was effectively overruled by Leatherman. E.g., Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008); Rheingold 568 F. Supp.2d at 394; Simkins v. Bellevue Hosp., 832 F. Supp. 69, 74 n.3 (S.D.N.Y. 1993). Cf. Walker v. Thompson, 288 F.3d 1005, 1008 (7th Cir. 2002); Bullard v. City of New York, 240 F. Supp.2d 292, 301-02 (S.D.N.Y. 2003). Second, the quote from Dwares refers only to the theory that a municipality had "a custom or policy" and it says

16

only that "a single incident" will "generally" not suffice "to raise an inference of a custom or policy". This observation on its face was not intended as a strict rule of pleading -- note the use of the word "generally" -- and does not purport to offer a rule for interpreting the pleading of an untutored pro se litigant. Finally, Dwares does not appear to address the requirement for pleading that a municipality failed to properly train its employees, which is one of the grounds articulated by plaintiff for holding the City liable.

As for the defendants' argument about plausibility (Defs.' Mem. of Law 6), it ignores the factual allegations of the complaint. Defendants simply say, without elaboration, that "the contention that the environment at Rikers Island was 'unsafe' is not supported by factual allegations to make the complaint 'plausible'. . . . Plaintiff fails to describe with any particularity how Rikers Island was unsafe apart from the result -- one alleged attack by a fellow inmate." (Id.). The short answer is that the claim by plaintiff is not for a generic unsafe environment, but rather for a failure to protect him from a dangerous fellow inmate, and he alleges specifically that the inmate in question had been exhibiting clear signs of his dangerousness, prompting plaintiff and at least one other inmate to warn the prison staff repeatedly of the danger, warnings that the

17

staff ignored. These allegations are ample to plead "deliberate indifference" by prison staff, and certainly do not reflect any lack of plausibility in plaintiff's assertions. As for the claimed absence of particularity, defendants' accusation is factually baseless and in any event <u>Leatherman</u> makes clear that such detailed pleading is not required under Rule 8(a)(2).[5]


C.    <u>Defendants' Attack on Any State-Law Claims</u>


Defendants next focus on what they refer to as plaintiff's state-law claims, for which they seek dismissal on the basis that plaintiff has not filed a notice of claim,[6] which is a prerequisite to suit against the city. (Defs.' Mem. of Law 8-9 (citing N.Y. Gen. Mun. Law § 50-i)). There is no indication in the complaint that plaintiff is asserting any state-law claims, and accordingly there

---

[5] Defendants further complain that plaintiff does not allege that "any person, on any level, at Rikers Island . . . had actual knowledge of the attacker's mental problems." (Defts' Mem. of Law 6). They offer no legal precedent for the implicit notion that a plaintiff must allege more than that the attacking inmate was exhibiting symptoms of dangerous mental instability and that he or others brought this condition to the attention of the staff on several occasions. If the staff in fact neither knew of the other inmate's condition nor had reason to investigate, that defense will emerge from evidence and be the subject of fact-finding. The plaintiff need not anticipate and rebut such evidence as a matter of pleading.

[6] Defendants make the assertion that plaintiff did not file such a notice, but offer no evidence to support that assertion.

is no basis for granting dismissal of such a claim.[7]

## D. The Status of Officer Walker

There remains one issue that needs to be addressed as an outgrowth of defendants' dismissal motion. In the proposed amended complaint plaintiff refers specifically to Officer Walker as the prison staff member to whom he and another inmate complained before the assault on plaintiff. Implicitly the complaint is alleging that Officer Walker did not act to assist these inmates or, perhaps, to bring the matter to the attention of more senior prison officials. Nonetheless, neither in the caption nor in the body of the complaint does plaintiff seek to name him as a defendant.

In an excess of caution, before addressing the defendants' motion, we required plaintiff to specify in writing why he had not named Walker as a defendant in his original complaint. (See Order dated Sept. 25, 2008). This inquiry was designed to assist the court in determining whether a claim against Walker (if the amended

---

[7] We note in any event that if plaintiff intends to assert a state-law claim, his alleged failure to file an administrative notice of claim would provide a basis for an affirmative defense by defendants, which they would have to plead and the pertinent basis for which they would have to prove. See generally Jones v. Bock, 549 U.S. 199, 212 (2007).

19

complaint were liberally interpreted as seeking to press one) would be time-barred under the terms of Fed. R. Civ. P. 15(c). In response, plaintiff represented that he had met with an attorney who ultimately declined to represent him, and who appears to have lost plaintiff's file after their meeting. According to plaintiff, the attorney subsequently drafted the original complaint based on his recollection of their first meeting, but without the specific information contained in the file, including the name of the officer.[8] Plaintiff also says that he did not realize that he needed to name the officer as a defendant. (Pl.'s Reply to Ct. Order dated Oct. 9, 2008 at 1-2).

We conclude, on the record before us, that Officer Walker should not be deemed a defendant. Morever, even if the proposed amended complaint were read as proposing to add him, such an application would have to be denied as time-barred.

The original complaint does not refer to any individual prison staffer, either as a defendant or otherwise. This seems consistent

---

[8] It appears that the attorney drafted the complaint for plaintiff, perhaps in part to compensate him for misplacing the file, but did not continue to represent plaintiff, who since filing the complaint has litigated the case as a pro se plaintiff. The attorney notified plaintiff that he had located the file on September 28, 2007 and returned the file, allowing plaintiff to file an amended complaint on December 12, 2007. (Pl.'s Reply to Ct. Order dated Oct. 9, 2008 at 1-2).

with our understanding that plaintiff did not intend to name an individual as a defendant. Since the incident in question took place on September 20, 2004, the three-year statute of limitations under section 1983, see, e.g., Zapata v. City of New York, 502 F.3d 192, 194 n.3 (2d Cir. 2007), expired on September 20, 2007, shortly after the filing of the original complaint.[9]

The proposed amended complaint also does not include Officer Walker as a defendant either in the caption or in the text, and plaintiff has not otherwise sought by motion to amend to add him as a party. This alone is sufficient to conclude that he is not a defendant. In any event, an application to add him after September 20, 2007 would be untimely.

The pertinent provision for assessing an attempt to add a party after the limitations period has run is Rule 15(c)(3). It permits the addition of a defendant and the relation back of the claim to the filing of the original pleading if (1) the new claim arises "out of the same conduct, transaction or occurrence" as is

_____

[9] Causes of action under 42 U.S.C. § 1983 accrue for statute-of-limitations purposes "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002) (internal quotations omitted). Mr. Colon-Rodriguez's claim accrued on September 20, 2004, the date of his assault. (Am. Verified Compl. ¶ 14).

21

pled in the original complaint, (2) the new party had actual or constructive notice of the filing of the first pleading within 120 days of the commencement of the lawsuit, and (3) within that period the new party knew or should have known that, "but for a mistake concerning the identity of the proper party", he would have been included in the original complaint. See, e.g., Soto v. Brooklyn Corr. Facility, 80 F.3d 34, 35-36 (2d Cir. 1996); Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 469-70 (2d Cir. 1995). Plaintiff could not satisfy the third element of this rule.[10]

The Second Circuit has indicated that the reference in Rule 15(c) to a "mistake concerning the identity of the proper party" encompasses errors of fact about the name of the correct defendant and errors of law concerning the requirement that a particular individual needs to be identified as a defendant, but that it does

---

[10] Plaintiff satisfies the first requirement and arguably the second as well. The allegations of the amended complaint, as applicable to Officer Walker, concern the same events as are the subject of the original complaint. As for notice of filing, if he had been included in the original pleading he would presumably have been represented by the same counsel, that is, the New York City Law Department, and the amended pleading, which referred specifically to Officer Walker, was filed less than 120 days after the original one. In comparable circumstances courts have generally found that the proposed new defendant had constructive notice of the filing through the shared attorney for the original defendant. See, e.g., Davis v. City of New York, 2008 WL 2511734, at *3 (S.D.N.Y. June 19, 2008); Walton v. Safir, 122 F. Supp.2d 466, 476 n.11 (S.D.N.Y. 2000); Hood v. City of New York, 739 F. Supp. 196, 199 S.D.N.Y. 1990). See also Gleason v. McBride, 869 F.2d 688, 693 (2d Cir. 1989).

22

not include cases in which, at the time of the preparation of the original pleading, the plaintiff simply did not know the name of the defendant. See, e.g., Soto, 80 F.3d at 35-36 (error as to requirement for naming individuals); Barrow, 66 F.3d at 470 (no relation back when substituting names of individual defendants for John Does); Howard v. City of New York, 2006 WL 2597857, at *4-5 (S.D.N.Y. Sept. 6, 2006). In light of plaintiff's own explanation, he cannot satisfy this narrow requirement.

Plaintiff reports that he originally knew the name of the corrections officer in question but could not recall it when the complaint was being prepared because the attorney to whom he had entrusted his papers could not locate them. He also says that he was not aware that he had to name the officer in order to sue him.

This congeries of circumstances does not meet the exception for legal errors recognized in Soto. By plaintiff's own account, even if he had known that he needed to name the individual in order to sue him, he would have been unable to do so at the time of his original filing since he did not have his papers and thus at the time could not identify him. Thus it cannot be said that "but for" the legal error, he would have named Officer Walker in the original complaint. All that he could have done in such a circumstance would

have been to name a John Doe defendant in place of the officer, and, as held in Barrow and reaffirmed in Soto, that would not have triggered reference back under Rule 15(c)(3).

Finally, we note that equitable tolling would not be available to plaintiff in view of the current record. Cases justifying such tolling are "rare and exceptional". Belot v. Burge, 490 F.3d 201, 205 (2d Cir. 2007); Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). A plaintiff's pro se status, incarceration, ignorance of the law or difficulty in obtaining documents does not warrant such tolling. E.g., Ruiz v. Poole, 566 F. Supp.2d 336, 339 (S.D.N.Y. 2008); Morales v. United States, 373 F. Supp.2d 367, 372-73 (S.D.N.Y. 2005). Similarly, an attorney's mistake or even negligence does not constitute the "extraordinary and rare" circumstance that provides a basis for equitable tolling. Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001). Cf. Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004) (tolling may be available if "an attorney's conduct is so outrageous and incompetent that it is truly extraordinary").

Plaintiff here simply does not proffer circumstances that are "rare and exceptional". Morever, he fails to demonstrate the diligence that is also a required showing for invoking equitable

24

tolling, see, e.g., Belot, 490 F.3d at 205, since he did not file
the original complaint until very shortly before the expiration of
the three-year statute of limitations.

In sum, Officer Walker is not a party to this lawsuit and may
not be added by virtue of a very liberal reading of the amended
complaint.

### CONCLUSION

For the reasons stated, we recommend that defendants' motion
to dismiss be granted with respect to the claims asserted against
the New York City Department of Correction and Board of Correction,
and otherwise denied.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure,
the parties shall have ten (10) days from this date to file written
objections to this Report and Recommendation. Such objections shall
be filed with the Clerk of Court and served on all adversaries,
with extra copies to be delivered to the chambers of the Honorable
George B. Daniels, Room 630, 500 Pearl Street, New York, New York
10007, and to the chambers of the undersigned, Room 1670, 500 Pearl
Street, New York, New York, 10007. Failure to file timely

objections may constitute a waiver of those objections both in the
District Court and on later appeal to the United States Court of
Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985); Small v.
Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989);
28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: New York, New York
       March 27, 2009

                              RESPECTFULLY SUBMITTED,


                              MICHAEL H. DOLINGER
                              UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been mailed this day to:

Mr. Freddy Colon Rodriguez
918 Dumont Avenue, Apt. #1-F
Brooklyn, N.Y. 11207

Anna Nguyen, Esq.
Bradford C. Patrick, Esq.
Asst. Corporation Counsels
The City of New York Law Department
100 Church Street
New York, N.Y. 10007